# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:

**CAPITOL BANCORP LTD.,**[1]

Debtor.

Chapter 11

Case No. 12-58409
(Jointly Administered)

Hon. Marci B. McIvor

### DEBTORS' MOTION FOR AN ORDER AUTHORIZING SETTLEMENT AGREEMENT WITH THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

Capitol Bancorp Ltd. ("**CBC**") and Financial Commerce Corporation ("**FCC**"), debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), pursuant to Rule 9019(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), file this motion (the "**Motion**") seeking entry of an order authorizing a proposed Settlement Agreement with the Official Committee of Unsecured Creditors (the "**Committee**") with respect to the Committee's pending objections to confirmation of the Debtors' Amended Joint Liquidating Plan, final approval of the Disclosure Statement in support of the Amended Joint Liquidating Plan, and certain related matters.

In support of this Motion, the Debtors respectfully represent as follows:

### Jurisdiction

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1]      The Debtors in these jointly administered cases are Capitol Bancorp Ltd. (Case No. 12-58409) and Financial Commerce Corporation (Case No. 12-58406).

13834982.6

3.     The statutory predicate for the relief requested herein are Bankruptcy Rule 9019(a) and section 105(a) of the Bankruptcy Code.

## Background

4.     On August 9, 2012 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under Title 11 of the United States Code (the "**Bankruptcy Code**") to commence their respective jointly administered chapter 11 cases (the "**Chapter 11 Cases**").

5.     On May 16, 2013, the Debtors filed their (i) Joint Liquidating Plan of Capitol Bancorp Ltd. and Financial Commerce Corporation [Dkt. No. 424] and (ii) disclosure statement in support of the Plan [Dkt. No. 425].

6.     On: (i) May 22, 2013 the Debtors filed their amended disclosure statement in support of the Plan (the "**Disclosure Statement**") [Dkt. No. 436] and (ii) July 17, 2013, the Debtors filed their Amended Joint Liquidating Plan of Capitol Bancorp Ltd. and Financial Commerce Corporation (the "**Plan**") [Dkt. No. 523].[2]

7.     On September 12, 2013, the Committee filed its Motion for an Order: (1) Appointing a Chief Restructuring Officer to Manage the Debtors Pursuant to 11 U.S.C. 105(a) and 1107(a); or, (2) In the Alternative, Appointing a Chapter 11 Trustee Pursuant to 11 U.S.C. 1104(a) (the "**CRO Motion**") [Dkt. No. 586].  On September 26, 2013, the Debtors filed their response in opposition to the CRO Motion [Dkt. No. 600].

8.     On October 14, 2013, the Debtors filed their Motion for Order (I) Authorizing and Approving the Sale (the "**Talmer Sale**") of Certain Assets Free and Clear of All Encumbrances; (II) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts; (III) Waiving the Fourteen Day Stay of Fed. R. Bankr. P. 6004(h) and 6006(d); and (IV)

---

[2] Capitalized terms used but not defined herein shall have the meaning given them in the Plan.

Granting Related Relief (the "**Sale Motion**") [Dkt. No. 625] to Talmer Bancorp, Inc. ("**Talmer**"). On November 19, 2013, the Committee filed its objection to the Sale Motion [Dkt. No. 679].

9.      On November 21, 2013, the Court entered its Order granting the Sale Motion and approving the Talmer Sale (the "**Sale Order**") [Dkt. No. 692].

10.      On November 27, 2013, the Committee filed its Notice of Appeal of the Sale Order (the "**Sale Order Notice of Appeal**") [Dkt. No. 705].

11.      On November 8, 2013, the Debtors filed their Motion for Order Authorizing Settlement with the Federal Deposit Insurance Corporation (the "**FDIC Settlement Motion**") [Dkt. No. 651].

12.      On November 8, 2013, the Debtors filed their Ex Parte Motion to Shorten Time for Response and Hearing on the FDIC Settlement Motion ("**Motion to Expedite**") [Dkt. No. 652].  On November 8, 2013, the Committee filed its Objection to the Motion to Expedite [Dkt. No. 653].

13.      On November 8, 2013, the Court entered its Order granting the Motion to Expedite (the "**Order Granting Motion to Expedite**") [Dkt. No. 654].

14.      On November 12, 2013, the Committee filed its Objection to the FDIC Settlement Motion [Dkt. No. 662].

15.      On November 12, 2013, the Court entered its Order granting the FDIC Settlement Motion (the "**Settlement Order**") [Dkt. No. 663].

16.      On November 22, 2013, the Committee filed its Notice of Appeal of the Settlement Order (the "**Settlement Order Notice of Appeal**") [Dkt. No. 695].

17.      On November 22, 2013, the Committee filed its Notice of Appeal of the Order Granting Motion to Expedite (the "**Order to Expedite Notice of Appeal**" and collectively with

the Sale Order Notice of Appeal and the Settlement Order Notice of Appeal, the "**Notices of Appeal**") [Dkt. No. 696].

18.     On December 6, 2013, the Committee filed its Objection to confirmation of the Plan and the adequacy of the Disclosure Statement (the "**Committee Objection**") [Dkt. No. 717].

19.     U.S. Bank National Association, as Indenture Trustee, Institutional Trustee and Guarantee Trustee, Wilmington Trust Company, as Indenture Trustee, and Manufacturers and Traders Trust Company, as Indenture Trustee, and The Bank of New York Mellon Trust Company, N.A., as Trustee, each members of the Committee, also filed objections to confirmation of the Plan and final approval of the Disclosure Statement (collectively, the "**Committee Member Objections**" and together with the Committee Objection, collectively, the "**Objections**") [Dkt. Nos. 719, 721 and 722].

20.     On December 11, 2013, the Committee filed its Motion to Suspend December 18, 2013 Hearing on Confirmation of Debtors' Proposed Plan of Reorganization, and/or for Stay of Orders Pending Appeal (the "**Stay Motion**") [Docket No. 732].  On December 16, 2013, the Debtors filed their Objection to the Stay Motion [Docket No. 738].

21.     Although it is unclear which party will prevail on the issues raised in the Appeals, the Objections and the Stay Motion, it is clear that litigating those issues will add unnecessary complexity, inconvenience, delay and expense to these Chapter 11 Cases to the detriment of all parties in interest. Furthermore, litigating those issues could impede the closing of the Talmer Sale—a critical component of the Plan and the resolution of these Chapter 11 Cases.

22.     After extensive negotiations and in consideration of the benefits described below, the Debtors and the Creditors have agreed to enter into a settlement agreement to resolve the

4

Appeals, the Objections, and the Stay Motion on the terms set forth in the Settlement Agreement attached as **Exhibit 6** (the "**Settlement Agreement**"). The Settlement Agreement will also result in (a) the withdrawal of the Objections and (b) the Committee providing its support for entry of an order confirming the Plan and granting final approval of the Disclosure Statement. The terms of the Settlement Agreement are referred to as the "**Settlement**."

## Relief Requested

23. The Debtors request entry of an order, substantially in the form attached as **Exhibit 1**: (a) approving the terms of the Settlement Agreement as set forth in **Exhibit 6** pursuant to Bankruptcy Rule 9019(a); and (b) incorporating the terms of the Settlement in any order of the Court confirming the Plan and granting final approval of the Disclosure Statement.

24. The terms of the Settlement Agreement are complex and cannot be fairly summarized here without a full recitation of the Settlement itself. The Settlement Agreement, attached Exhibit 6, provides the complete terms of the Settlement.

## Basis for Relief

25. On motion by the trustee, and after notice and a hearing, a bankruptcy court may approve a compromise or settlement. FED. R. BANKR. P. 9019(a).

26. Settlements are generally favored by law. *In re SCBA Liquidation, Inc.*, 451 B.R. 747, 768 (Bankr. W.D. Mich. 2011) (*quoting In re Meadows*, 396 B.R. 485, 499 (B.A.P. 6th Cir. 2008)). The purpose of a settlement agreement is often to avoid the "expenses and burdens associated with litigating sharply contested and dubious claims" to the debtor's estate. *In re Bard*, 49 F. App'x 528, 530 (6th Cir. 2002) (*quoting In re A & C Props.*, 784 F.2d 1377, 1380-81 (9th Cir. 1986)); *see Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) ("In administering [bankruptcy] proceedings in an

economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts.").

27.     A court must review a settlement agreement to determine if it is "fair and equitable" before it may approve the settlement agreement under Bankruptcy Rule 9019(a). *TMT Trailer Ferry, Inc.*, 390 U.S. at 424; *Reynolds v. Commissioner*, 861 F.2d 469, 473 (6th Cir. 1988).  In conducting this review, the court must "apprise itself of the underlying facts and to make an independent judgment as to whether the compromise is fair and equitable."  *Reynolds*, 861 F.2d at 473 (*citing In re American Reserve Corp.*, 841 F.2d 159, 162-63 (7th Cir. 1987)). "What is being sought is not the resolution of issues, but rather the identification and clarification of the litigation issues so that the [bankruptcy court] can make an informed decision on the reasonableness of the settlement*." In re Bell & Beckwith*, 93 B.R. 569, 574-75 (Bankr. N.D. Ohio 1988).  However, the court need not conduct a trial or write an extensive opinion to approve a settlement agreement.  *In re MQVP, Inc.*, 477 Fed. Appx. 310, 313 (6th Cir. 2012).

28.     In this case, the Settlement is fair and equitable to the Debtors and their estates, and will benefit all parties in interest in the Chapter 11 Cases.  The Settlement will allow the Talmer Sale to close without interruption, the benefits of which were extensively briefed by the Debtors and clearly identified on the record of an evidentiary hearing at which the Court considered and approved the Debtors' Sale Motion. . Moreover, the Settlement will permit the Plan to be proceed through confirmation largely unopposed, leading to the successful conclusion of these Chapter 11 Cases.  Furthermore, the Settlement avoids extensive litigation and the attendant risk to all parties in interest and allows the Debtors' estates to avoid significant professional fees and expenses in litigating the Appeals and the Stay Motion.  Clearing the path to the closing of the Talmer Sale, providing for a Committee-supported Plan confirmation

proceeding and avoiding the complexity, risk, delay, inconvenience and expense of extensive litigation weighs heavily in favor of the Settlement.

29.     In the Debtors' reasonable business judgment, the Settlement is in the best interests of the Debtors' estates and their creditors in that it facilitates the orderly resolution of these contentious Chapter 11 Cases at a time when the Debtors and their creditors need to move expeditiously toward Plan confirmation.  In sum, the Settlement guarantees the certain and immediate resolution of issues that could have impeded the administration of the Debtors' estates and curtails both the cost and uncertainty of litigating these complex issues.

30.     The Committee supports the Settlement and entry of an order approving the Settlement Agreement.

31.     For these reasons, the Settlement is fair and equitable, constitutes a reasonable exercise of the Debtors' business judgment, and should be approved.

### No Prior Request

32.     No prior motion for the relief requested herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit 1**: (i) approving the terms of the Settlement as set forth in **Exhibit 6** pursuant to Bankruptcy Rule 9019(a); (ii) incorporating the terms of the Settlement in any order entered by the Court to confirm the Plan; and (iii) granting such other relief as this Court deems appropriate.

13834982.6

Date: December 31, 2013          HONIGMAN MILLER SCHWARTZ AND COHN LLP
Counsel for the Debtors


By: /s/ E. Todd Sable
       E. Todd Sable (P54956)
       Joseph R. Sgroi (P68666)
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226
Telephone: (313) 465-7000
Facsimile: (313) 465-8000
Email: tsable@honigman.com

**Exhibit 1**

**Proposed Order**

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:

**CAPITOL BANCORP LTD.,**[1]

Debtor.

Chapter 11

Case No. 12-58409
(Jointly Administered)

Hon. Marci B. McIvor

## ORDER AUTHORIZING SETTLEMENT AGREEMENT BETWEEN THE DEBTORS AND THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

Upon the Debtors' Motion For An Order Authorizing Settlement Agreement with The Official Committee Of Unsecured Creditors (the "**Motion**");[2] the relief requested in the Motion being in the best interests of the Debtors' estates, their creditors and other parties in interest; notice of this Motion having been appropriate in the circumstances and no other or further notice being necessary or required; no objection to the Motion having been filed with the Court; and after due deliberation and good cause appearing therefor;

IT IS ORDERED THAT:

1.      The Motion is granted.

2.      Pursuant to Bankruptcy Rule 9019(a) and Section 105(a) of the Bankruptcy Code, the Settlement is approved. The Debtors and the Committee are authorized to enter into and perform the Settlement Agreement, and to take all actions contemplated and required by the Settlement.

---

[1]      The Debtors in these jointly administered cases are Capitol Bancorp Ltd. (Case No. 12-58409) and Financial Commerce Corporation (Case No. 12-58406).

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings given to such terms in the Motion.

6.      Language reflecting the terms of the Settlement, acceptable to the Debtors and the Committee, will be included in any order entered by the Court confirming the Plan (the "**Confirmation Order**").

7.      To the extent of any conflict between the terms of the Settlement and the terms and provisions of the Plan and/or Confirmation Order, the terms and provisions of the Settlement shall govern and control.

8.      The Court retains jurisdiction with respect to all matters arising from or related to the Settlement and the implementation of this Order.

**Exhibit 2**

**Notice and Opportunity to Object**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

|  |  |
|---|---|
| In re:<br><br>**CAPITOL BANCORP LTD**.,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 12-58409<br>(Jointly Administered)<br><br>Hon. Marci B. McIvor |

**NOTICE OF DEBTORS' MOTION FOR AN ORDER AUTHORIZING SETTLEMENT**
**AGREEMENT WITH THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

On December 31, 2013, Capitol Bancorp Ltd. ("**CBC**") and Financial Commerce Corporation ("**FCC**"), as debtors and debtors in possession in the above-captioned chapter 11 cases, filed their *Debtors' Motion For An Order Authorizing Settlement Agreement with The Official Committee Of Unsecured Creditors* (the "**Motion**").

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)**

**The Debtors intend to ask the Court to expedite the hearing on the Motion.** If this request is granted, and you do not want the Court to grant the relief sought in the Motion, or if you want the court to consider your view on the Motion, before the hearing you must:

A.      File with the Court a written response or an answer,[2] explaining your position at:

> United States Bankruptcy Court
> 211 W. Fort Street, Suite 2100
> Detroit, MI 48226

If you mail your response to the Court for filing, you must mail it early enough so the Court will **receive** it on or before the date set by the Court.

You must also mail a copy to:

---

[1]      The Debtors in these jointly administered cases are Capitol Bancorp Ltd. (Case No. 12-58409) and Financial Commerce Corporation (Case No. 12-58406).

[2]      Any response or answer must comply with Fed. R. Civ. P. 8(b), (c) and (e).

E. Todd Sable, Esq.
Honigman Miller Schwartz and Cohn LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226

B.     If a response or answer is timely filed and served, the clerk will schedule a hearing on the Motion and you will be served with a notice of the date, time, and location of the hearing.

If the Court does not expedite the hearing, and you do not want the Court to grant the relief sought in the Motion, or if you want the court to consider your view on the Motion, you must take the foregoing actions within 14 days of the date this notice was served.

**If you or your attorney do not take these steps, the Court may decide that you do not oppose the relief sought in the Motion and may enter an order granting that relief.**

HONIGMAN MILLER SCHWARTZ AND COHN LLP
Counsel for the Debtors

By:     /s/ E. Todd Sable
            E. Todd Sable (P54956)
            Joseph R. Sgroi (P68666)
Date: December 31, 2013
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226
Telephone: (313) 465-7000
Facsimile: (313) 465-8000
Email: tsable@honigman.com

## Exhibit 3

## Required Brief – Not Applicable

**Exhibit 4**

**Certificate of Service**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re:

**CAPITOL BANCORP LTD.,**[1]

Debtor.

Chapter 11

Case No. 12-58409
(Jointly Administered)

Hon. Marci B. McIvor

## CERTIFICATE OF SERVICE

Debtors have engaged a Noticing Agent, which will serve this Motion and file a subsequent Proof of Service after it has performed the service.

HONIGMAN MILLER SCHWARTZ AND COHN LLP
Counsel for the Debtors

By:      /s/ E. Todd Sable
         E. Todd Sable (P54956)
         Joseph R. Sgroi (P68666)
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226
Telephone: (313) 465-7000
Facsimile: (313) 465-8000
Email: tsable@honigman.com

Date: December 31, 2013

---

[1]     The Debtors in these jointly administered cases are Capitol Bancorp Ltd. (Case No. 12-58409) and Financial Commerce Corporation (Case No. 12-58406).

13834982.6

## Exhibit 5

## Declaration – Not Applicable

## Exhibit 6

## Settlement Agreement

# SETTLEMENT AGREEMENT

This settlement agreement dated as of December 31, 2013 (the "<u>Settlement Agreement</u>") is by and among Capitol Bancorp Ltd. and Financial Commerce Corporation (collectively, the "<u>Debtors</u>") and the Official Committee of Unsecured Creditors of Capitol Bancorp Ltd., *et al.* (the "<u>Committee</u>").

## RECITALS

WHEREAS, on August 9, 2012, the Debtors each filed voluntary cases under chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "<u>Bankruptcy Code</u>");

WHEREAS, on May 16, 2013, the Debtors filed their (i) Joint Liquidating Plan of Capitol Bancorp Ltd. and Financial Commerce Corporation [Dkt. No. 424] and (ii) disclosure statement in support of the Plan [Dkt. No. 425];

WHEREAS, on (i) May 22, 2013 the Debtors filed their amended disclosure statement in support of the Plan (the "<u>Disclosure Statement</u>") [Dkt. No. 436] and (ii) July 17, 2013, the Debtors filed their Amended Joint Liquidating Plan of Capitol Bancorp Ltd. and Financial Commerce Corporation (the "<u>Plan</u>") [Dkt. No. 523][1];

WHEREAS, on September 12, 2013, the Committee filed its Motion of the Official Committee of Unsecured Creditors for an Order: (1) Appointing a Chief Restructuring Officer to Manage the Debtors Pursuant to 11 U.S.C. 105(a) and 1107(a); or, (2) In the Alternative, Appointing a Chapter 11 Trustee Pursuant to 11 U.S.C. 1104(a) (the "<u>CRO Motion</u>") [Dkt. No. 586];

WHEREAS, on September 26, 2013, the Debtors filed their response in opposition to the CRO Motion [Dkt. No. 600];

WHEREAS, on October 14, 2013, the Debtors filed their Motion for Order (I) Authorizing and Approving the Sale of Certain Assets Free and Clear of All Encumbrances; (II) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts; (III) Waiving the Fourteen Day Stay of Fed. R. Bankr. P. 6004(h) and 6006(d); and (IV) Granting Related Relief [Dkt. No. 625];

WHEREAS, on November 19, 2013, the Committee filed its objection to the Debtors' Motion for Order (I) Authorizing and Approving the Sale of Certain Assets Free and Clear of All Encumbrances; (II) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts; (III) Waiving the Fourteen Day Stay of Fed. R. Bankr. P. 6004(h) and 6006(d); and (IV) Granting Related Relief [Dkt. No. 679];

---

[1] Capitalized terms used but not defined herein shall have the meaning given them in the Plan.

WHEREAS, on November 21, 2013, the Court entered its Order (I) Authorizing and Approving the Sale of Certain Assets Free and Clear of All Encumbrances; (II) Authorizing and Approving the Assumption and Assignment of Certain Executory Contracts; (III) Waiting the Fourteen Day Stay of Fed. R. Bankr. P. 6004(h) and 6006(d); and (IV) Granting Related Relief (the "Sale Order") [Dkt. No. 692];

WHEREAS, on November 27, 2013, the Committee filed its Notice of Appeal of the Sale Order (the "Sale Order Notice of Appeal") [Dkt. No. 705];

WHEREAS, on November 8, 2013, the Debtors filed their Motion for Order Authorizing Settlement with the Federal Deposit Insurance Corporation [Dkt. No. 651];

WHEREAS, on November 8, 2013, the Debtors filed their *Ex Parte* Motion to Shorten Time for Response and Hearing on Debtors' Motion for an Order Authorizing Settlement Agreement with the Federal Deposit Insurance Corporation [Dkt. No. 652];

WHEREAS, on November 8, 2013, the Committee filed its Objection to the Debtors' Motion to Shorten Time for Response and Hearing on Debtors' Motion to Approve Compromise with the FDIC [Dkt. No. 653];

WHEREAS, on November 8, 2013, the Court entered its Order Granting *Ex Parte* Motion to Shorten Time for Response and Hearing on Debtors' Motion for an Order Authorizing Settlement Agreement with the Federal Deposit Insurance Corporation (the "Order Granting Motion to Expedite") [Dkt. No. 654];

WHEREAS, on November 12, 2013, the Committee filed its Objection to the Debtors' Motion for Order Authorizing Settlement with the Federal Deposit Insurance Corporation [Dkt. No. 662];

WHEREAS, on November 12, 2013, the Court entered its Order Authorizing Settlement with the Federal Deposit Insurance Corporation (the "Settlement Order") [Dkt. No. 663];

WHEREAS, on November 22, 2013, the Committee filed its Notice of Appeal of the Settlement Order (the "Settlement Order Notice of Appeal") [Dkt. No. 695];

WHEREAS, on November 22, 2013, the Committee filed its Notice of Appeal of the Order Granting Motion to Expedite (the "Order to Expedite Notice of Appeal" and collectively with the Sale Order Notice of Appeal and the Settlement Order Notice of Appeal, the "Notices of Appeal") [Dkt. No. 696];

WHEREAS, on December 6, 2013, the Committee filed its Objection of the Official Committee of Unsecured Creditors to (I) Confirmation of the Amended Joint Liquidating Plan of Capitol Bancorp Ltd. and Financial Commerce Corporation and (II) the Adequacy of the Disclosure Statement (the "Committee Objection") [Dkt. No. 717];

WHEREAS, certain members of the Committee also filed objections to confirmation of

the Plan and the adequacy of the Disclosure Statement (collectively, the "<u>Committee Member Objections</u>") [Dkt. Nos. 719, 721 & 722];

WHEREAS, the Debtors and the Committee have reached a settlement of their outstanding disputes;

NOW, THEREFORE, in consideration of the foregoing, the Debtors and the Committee, intending to be legally bound hereby, agree as follows:

## I. <u>Amendments to the Plan and Liquidation Trust Agreement</u>

The Debtors agree that the (i) Plan and (ii) Liquidation Trust Agreement and Declaration of Trust annexed to the Plan as Exhibit A (the "<u>Liquidating Trust</u>") shall be amended as follows:

A.  <u>Liquidation Trust Oversight Committee (Liquidating Trust)</u>.  The second sentence of section 4.07(a) of the Liquidating Trust is deleted and replaced with the following sentence: "The Liquidation Trust Oversight Committee shall consist of three (3) members, two (2) of whom shall be selected by the Committee and one (1) of whom shall be selected by the Board of Directors of CBC."

B.  <u>Liquidation Trust Oversight Committee (Plan)</u>.  The following provision shall be added to the end of the second paragraph of Article V.D. of the Plan: "The Liquidation Trust Oversight Committee (as defined in the Liquidating Trust) shall consist of three (3) members, two (2) of whom shall be selected by the Committee and one (1) of whom shall be selected by the Board of Directors of CBC.  The proposed members of the Liquidation Trust Oversight Committee shall meet (in person or by telephone) on or before the date of the hearing on confirmation of the Plan to choose, by majority vote, the Liquidation Trustee.  The entity or person chosen to be the Liquidation Trustee at such meeting shall enter into the Liquidating Trust with the Debtors as of the Effective Date."

C.  <u>Releases and Indemnification by Debtors</u>.  Article XII.E. is deleted from the Plan and replaced with the following:

"The Debtors' respective present and former members, partners, equity-holders, officers, directors, employees, representatives, advisors, attorneys, agents and Professionals (collectively, the "Insiders") are not released from any Claims, obligations, rights, suits, damages, losses, causes of action, remedies and liabilities and such Claims, obligations, rights, suits, damages, losses, causes of action, remedies and liabilities are hereby expressly preserved and will be contributed to the Liquidating Trust on the Effective Date, consistent with Article V.D. hereof; provided, however, that the amounts the Insiders shall be required to pay on account of Claims, obligations, rights, suits, damages, losses, causes of action, remedies and liabilities based on acts or omissions occurring prior to the Petition Date (with the sole exception of causes of action under chapter 5 of the Bankruptcy Code, which shall not be subject to the limitations imposed by this Article XII.E.) shall in all cases be strictly limited to any amounts which may be actually recovered from any applicable insurance providers pursuant to any

3

applicable insurance policies, including directors' and officers' liability insurance policies and proceeds thereof; provided, further, however, that the Insiders shall timely submit such notices as may be required under such insurance policies, shall take all reasonable actions necessary to pursue coverage under such policies including filing and diligently prosecuting any legal actions (in court or arbitration) necessary to contest any denials of coverage by the insurance companies issuing such policies, and shall not settle or otherwise compromise or waive any claims for coverage under such policies without the express written consent of the Liquidation Trustee. Except with respect to any proceeds of such insurance policies, including directors' and officers' liability insurance policies and proceeds thereof (and causes of action under chapter 5 of the Bankruptcy Code), (1) neither the Liquidation Trustee, nor any other person or entity, shall have any right to pursue collection against, or collect from, the property or other assets of the Insiders, or the Insiders' estates or heirs, for any Claims, obligations, rights, suits, damages, losses, causes of action, remedies or liabilities based on acts or omissions occurring prior to the Petition Date and (2) the Liquidation Trustee, and every person and entity acting by or through the Liquidation Trustee, is enjoined and directed not to take any action of any kind against the property or other assets of the Insiders or the Insiders' estates or heirs. Neither the Debtors nor the Insiders make any representation or warranty regarding the nature, extent, enforceability or collectability of any such insurance policies."

In the event that the Toggle Option is implemented with the consent of the Liquidation Trustee and the Liquidation Trust Oversight Committee unanimously approves, this Section I.C. shall not be effective and the provisions of Article XII.E. of the Plan shall remain unchanged. For the avoidance of doubt, the Debtors shall have no duty to pursue the Toggle Option or the implementation thereof.

D.    <u>Exculpation and Limitation of Liability</u>.  Article XII.D. is amended as follows:

1.    The period at the end of the first paragraph of Article XII.D. of the Plan is deleted and the following provision is added to the end of the first paragraph of Article XII.D. of the Plan: "; provided, however, that the limitation of liability set forth herein shall only apply to acts or omissions occurring on or after the Petition Date."

2.    The following paragraph is added to Article XII.D. immediately after the first paragraph thereof:  "Neither the Committee nor any of its present or former members (in their individual capacities and as members of the Committee), advisors, Professionals, attorneys, or agents, shall have or incur any liability to any Holder of a Claim or an Equity Security Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan,

4837-3068-6487.15

except for their willful misconduct or gross negligence, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan; provided, however, that the limitation of liability set forth herein shall only apply to acts or omissions occurring on or after the Petition Date."

3.     The second paragraph of original Article XII.D. of the Plan is deleted and replaced with the following paragraph: "Notwithstanding any other provision of this Plan, no Holder of a Claim or Equity Security Interest, no other party in interest, none of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, and no successor or assigns of the foregoing, shall have any right of action against the Debtors, the Estates, the Reorganized Debtors, the Committee, the members of the Committee (in their individual capacities and as members of the Committee), or any of their respective present or former members, officers, directors, employees, advisors, Professionals, attorneys, agents, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the pursuit of confirmation of the Plan, consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their willful misconduct or gross negligence; provided, however, that the limitation on rights of action set forth herein shall only apply to acts or omissions occurring on or after the Petition Date."

E.     <u>Toggle Option to Reorganization.</u>

1.     The following sentence is added to the end of the first paragraph of Article V.C. of the Plan: "Notwithstanding anything to the contrary herein, the Liquidation Trustee shall have the right to veto the implementation of any Toggle Option that the Debtors may propose by serving written notice of such veto on the Debtors within twenty (20) Business Days after the Debtors have proposed such Toggle Option to the Liquidation Trustee in writing."

2.     The following parenthetical shall be added to the first sentence of the second paragraph of Article V.C. of the Plan, immediately after the phrase "equity in the Reorganized Debtors": "(which equity shall be book entry and Depository Trust Company eligible)".

F.     <u>The Liquidating Trust.</u>

1.     The definition of "Liquidation Trustee" in Section 1.01 of the Liquidating Trust shall be deleted and replaced with the following provision: ""<u>Liquidation Trustee</u>" means the entity or person chosen to serve as the Liquidation Trustee at the meeting of the Liquidation Trust Oversight Committee or its designated members, which shall be held prior to the date of the hearing on confirmation of the Plan pursuant to Article V.D. of the Plan."

5

2.     The third paragraph of Article V.D. of the Plan is deleted and replaced with the following:

"The Liquidating Trust shall become effective on the Effective Date. On the Effective Date, the Debtors shall contribute the following assets to the Liquidating Trust: (i) the Debtors' or Estates' share of the proceeds of the sale of certain of the Debtors' subsidiary banks to Talmer Bancorp, Inc. ("Talmer"), which sale was approved by the Bankruptcy Court by order entered at Docket No. 692, (ii) all causes of action belonging to the Debtors, including causes of action against directors, officers and Insiders (as defined herein) of the Debtors, (iii) that certain loan owned by either or both of the Debtors secured by real property in Lansing, Michigan and in the approximate amount of $446,008.04, which amount includes principal and accrued but unpaid interest, (iv) upon request of the Liquidation Trustee, copies of, or access by the Liquidation Trustee and his agents to, the Debtors' books, records, and files, and (v) all other assets of the Debtors, except (a) the Debtors' cash on hand in excess of the proceeds of the sale to Talmer (but only up to a maximum of $1,500,000, subject to the provisions of the next sentence), (b) furniture, fixtures and equipment, (c) the Debtors' indirect ownership interest in Summit Bank of Kansas City ("Summit Bank"), and (d) other assets of the Debtors reasonably required by the Debtors to operate during the period of the Wind Down Budget (e.g., software and other intellectual property, and the Debtors' books, records and files). Once the sum of the Debtors' cash on hand as of January 21, 2014 plus cumulative cash receipts during the period of the Wind Down Budget (not including Debtors' or Estates' share of the proceeds of the sale to Talmer, the proceeds of the sale of Summit Bank, the $160,000 funded by the Debtors pursuant to Article XIII.N hereof and any amounts received by the Debtors as pay agent or payor for any present or former non-debtor subsidiary banks) exceeds $1,500,000 (the "$1.5 Million Threshold"), the Debtors shall pay any amounts in excess of the $1.5 Million Threshold to the Liquidating Trust no later than the 15th day of each month following the month in which such proceeds are received, provided that the failure to do so will not impair any release or exculpation provision of the Plan or the Settlement Agreement dated as of December 31, 2013 by and among Capitol Bancorp Ltd. and Financial Commerce Corporation and the Official Committee of Unsecured Creditors of Capitol Bancorp Ltd., et al., provided, further, that in the event that the Debtors fail to timely turnover any amounts in excess of the $1.5 Million Threshold, the Liquidating Trustee may file an action for turnover of such funds and the Debtors will not oppose expedited consideration of such action. The proceeds of the sale of Summit Bank shall be contributed to the Liquidating Trust within five (5) business days after the Debtors' receipt of such proceeds. The Debtors shall use commercially reasonable efforts to liquidate their indirect ownership interest in Summit Bank and shall file a motion pursuant to section 363 of the Bankruptcy Code for

6

authorization to sell such interest in Summit Bank (and shall provide notice of such motion to the Liquidation Trustee and other parties that have requested notice in the Chapter 11 Cases). Except as set forth herein, assets (or proceeds thereof) not contributed to the Liquidating Trust on the Effective Date shall be contributed to the Liquidating Trust as soon as reasonably practicable after they are no longer necessary for the Wind Down or are liquidated by the Debtors. Except as provided in this paragraph, the Debtors shall not be required to contribute any cash or assets to the Trust. Notwithstanding anything to the contrary in the Liquidating Trust or the Plan, no cash or other assets (or proceeds of such other assets, including proceeds of causes of action) contributed to the Liquidating Trust at any time shall thereafter be available for or used to pay Administrative Claims, Fee Claims, Priority Tax Claims, post-Confirmation expenses of the Debtors, or claims of the Debtors' or Committee's Case Professionals for fees and expenses."

3.     The first sentence of section 4.02(d) of the Liquidating Trust shall be deleted and replaced with the following sentence: "In the event of a vacancy in the position of the Liquidation Trustee, the Liquidation Trust Oversight Committee, by majority vote, shall promptly select and appoint the successor Liquidation Trustee."

4.     The following sentence shall be added to the end of section 5.04(d) of the Liquidating Trust: "Notwithstanding anything to the contrary herein, any distributions to holders of Trust Preferred Securities Claims shall be made to the appropriate indenture trustee for the Trust Preferred Securities and shall be distributed by the indenture trustees for the Trust Preferred Securities in accordance with the Indentures and the Trusts."

5.     A new paragraph 4.07(i) shall be added to the Liquidating Trust as follows: "Notwithstanding anything to the contrary herein, the Liquidating Trustee shall not approve any Toggle Option (as defined in the Plan) proposed by the Debtors without the unanimous consent of the Liquidation Trust Oversight Committee."

G.     The Committee. Article XIII.F. of the Plan is deleted in its entirety and replaced with the following:

"**F.     DISSOLUTION OF THE COMMITTEE.**

On the Effective Date, the Committee shall dissolve automatically and all members, employees, or agents thereof shall be released and discharged from all rights and duties arising from or related to the Chapter 11 Cases; provided, that the Committee shall be deemed to remain in existence solely with respect to, and shall not be heard on any issue except, applications filed by the Professionals pursuant to sections 330 and 331 of the Bankruptcy Code."

H.    Occurrence of the Effective Date.  A new paragraph "D" shall be added to the end of Article IX of the Plan, as follows:

"**D.    OCCURRENCE OF THE EFFECTIVE DATE.**

The Effective Date shall occur no later than three Business Days after the Confirmation Date, unless the Debtors and the Committee consent to a later date."

I.    The Wind Down Budget.

1.    The "Capitol Bancorp Limited Estimated Sources and Uses 1/1/14 thru 6/30/14" document attached hereto as Exhibit A shall be attached to the Plan as new Exhibit C.  Furthermore, a new paragraph "M" shall be added to Article XIII. of the Plan, as follows:

"**M.    WIND DOWN BUDGET.**

The Debtors shall continue to operate after the Effective Date for the limited purposes of (i) winding down their affairs, (ii) liquidating any assets not contributed to the Liquidating Trust, and (iii) providing transition services to Talmer as agreed by the Debtors (collectively, the "Wind Down").  Entry of the Confirmation Order shall constitute approval of the budget attached hereto as Exhibit C for the six month period beginning January 21, 2014 and ending July 21, 2014 (the "Wind Down Budget").  On the 15th day of each month, beginning February 15, 2014 and ending on July 15, 2014, the Debtors shall provide the Liquidation Trustee with a comparison of the budgeted "Sources" and "Uses" to actual "Sources" and "Uses" for the prior month, in form and substance consistent with the Wind Down Budget.  For the avoidance of doubt, the budgetary restrictions on Debtors are in the aggregate, and not on per line item basis, and the Debtors may reallocate funds among line items in the Wind Down Budget, in their sole discretion, so long as the Debtors do not exceed the aggregate amount of $1,500,000 as provided in the Wind Down Budget; provided, however, that (1) the amounts set forth opposite the "Salary + Benefits (6 months)" and the rent component of the "Occupancy and other (6 months)" line items of the Wind Down Budget shall be pro rated to the extent the Debtors complete the Wind Down in less than six months and the Debtors shall not pay more than such pro rated amounts for such line items in the Wind Down Budget; (2) the Debtors may not pay more than 100% of the amounts set forth in the Wind Down Budget for "Severance for continued employees" and "Vacation time for continuing employees"; and (3) the Debtors may not pay office rent in excess of the amounts reflected in a corresponding office lease agreement for the period covered by the Wind Down Budget.  Notwithstanding any other provision of this paragraph and the Wind Down Budget: the Debtors may hire additional employees or independent contractors to assist in the Wind Down so long as the Debtors do not exceed the aggregate amount of $1,500,000 as provided in the

8

Wind Down Budget; and, the Debtors' total expenditures following the Effective Date shall not exceed $1,500,000 without the written consent of the Liquidation Trustee. Any cash in the Estates that is not utilized by the Debtors during the period through June 30, 2014 shall be contributed to the Liquidating Trust no later than July 7, 2014. "

2.      Article V.S. of the Plan is hereby deleted.

J.      <u>Payment of Certain Fees and Expenses</u>.

1.      A new paragraph "N" shall be added to Article XIII of the Plan as follows:

"**N.    PAYMENT OF CERTAIN FEES AND EXPENSES**.

On the Effective Date, the Debtors shall wire transfer (or cause to be wire transferred) to members of the Committee, as directed in writing by the Committee prior to the Effective Date, (i) $160,000 from the Debtors' cash on hand and (ii) $100,000 from the Escrowed Funds (as that term is defined in the Stock Purchase Agreement by and among Talmer Bancorp, Inc., Capitol Bancorp Ltd. and Financial Commerce Corporation dated as of October 11, 2013 which was approved by the Court at Docket No. 692). The $100,000 withdrawal from the Escrowed Funds shall be funded through a *pro rata* deduction from the Allowed amounts of fees and expenses awarded to the Committee's Professionals pursuant to their final fee applications, such *pro rata* amount to be calculated based on the amount of fees and expenses awarded to each of them pursuant to their final fee applications."

2.      The Liquidating Trust Agreement shall be amended as follows:

a)      The phrase "provided they will pay all Case Professionals promptly upon allowance of their fees and expenses" at the end of the second sentence of Section 5.01(a)(ii) shall be deleted.

b)      A new section 5.01(a)(vi) shall be added as follows:

"Notwithstanding anything to the contrary herein or in the Plan, distributions to Beneficiaries of Assets (or proceeds of Assets) contributed to the Liquidating Trust shall be made in the following order:

(A)      The first $575,000 of distributions shall be made, *pro rata*, to members of the Official Committee of Unsecured Creditors of Capitol Bancorp Ltd., *et al.* on account of fees and expenses (including fees and expenses of their counsel and advisors) incurred by such members through the Effective Date of the Plan;

(B)    Next, *pro rata* to the holders of the Class 1 – Senior Note Claims, Class 2 - Trust Preferred Securities Claims, and Class 4 – General Unsecured Claims until such time as the holders of the Class 1 – Senior Note Claims have received an aggregate distribution of $3,250,000; provided, however, that the distributions on account of the Class 2 – Trust Preferred Securities Claims shall be made directly to the holders of the Senior Note Claims until such time as the holders of the Senior Note Claims have received an aggregate distribution of $3.25 million; and

(C)    For all remaining Assets (or proceeds of Assets), *pro rata* to the holders of the Class 1 – Senior Note Claims, Class 2 - Trust Preferred Securities Claims and Class 4 - General Unsecured Claims; provided, however, that the Indenture Trustees shall exercise their respective Charging Liens against the distributions on account of the Class 2 - Trust Preferred Securities Claims pursuant to this subsection (C) for any unpaid fees and expenses of the Indenture Trustees through the Effective Date of the Plan until such fees and expenses are paid in full; provided, further, however, that after the fees and expenses of each Indenture Trustee through the Effective Date of the Plan are paid in full, distributions on account of the Class 2 - Trust Preferred Securities Claims for which such Indenture Trustee serves as Indenture Trustee shall be made directly to the holders of the Class 1 - Senior Note Claims until such Senior Note Claims are paid in full; provided, further, however that after the Class 1 – Senior Note Claims are paid in full, distributions shall be made *pro rata* to the holders of the Class 2 – Trust Preferred Securities Claims and the Class 4 – General Unsecured Claims until such claims are paid in full.

K.    <u>Provisions Governing Distributions and Cancellation of Indentures and Other Agreements</u>.

1.    A new paragraph shall be added to the end of Article VI.A. of the Plan, as follows:

"**(iv) Delivery of Distributions to Holders of Trust Preferred Securities Claims**

Distributions to Holders of Trust Preferred Securities Claims shall (a) be made by the Disbursing Agent to the applicable Indenture Trustee for further distribution in accordance with the Trust Agreements and (b) be deemed

10

completed when made by the Disbursing Agent to the applicable Indenture Trustee."

2.    Article I.B. of the Plan shall be amended to add the following definitions in alphabetical order:

"*"**Charging Lien**" means any charging lien or other priority in payment, to extent provided for in an Indenture or Trust Agreement, an Indenture Trustee is entitled to assert against distributions to be made to Holders of Trust Preferred Securities Claims under such Indenture or Trust Agreement for payment of Indenture Trustees Claims."

"*"**Indenture Trustees**" means (i) The Bank of New York Mellon Trust Company, N.A., (ii) U.S. Bank National Association, (iii) Wilmington Trust Company, and (iv) Manufacturers and Traders Trust Company, in each case in their capacities as trustees under the Indentures and Trust Agreements."

"*"**Indenture Trustees Claims**" means any fees, costs, expenses, disbursements and advances incurred or made by the Indenture Trustees pursuant to the Indentures and Trust Agreements including, without limitation, (a) any reasonable fees, costs, expenses and disbursements incurred by the Indenture Trustees and any of their attorneys, advisors (including, without limitation, financial advisors), agents and other professionals, in each case, whether prior to or on and after the Petition Date, or on or after the Effective Date, and (b) any fees, costs or expenses for services performed  by the Indenture Trustees in connection with distributions made to the Holder of Trust Preferred Securities Claims pursuant to this Plan, in each case, whether on or after the Petition Date, or on or after the Effective Date."

3.    Article V.U. of the Plan is deleted in its entirety and replaced with the following:

"**U.    CANCELLATION OF SECURITIES AND AGREEMENTS**

On the Effective Date, except as otherwise specifically provided for in the Plan, the obligations of the Debtors and the Indenture Trustees under the Debentures and the related Indentures, under the Declarations and under the Guarantee Agreements, and any other share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of the Debtors giving rise to any Claim or Equity Security Interests, shall be canceled, and the Debtors, the Litigation Trustee, the Reorganized Debtors, and the Indenture Trustees, as applicable, shall not have any continuing obligations thereunder; provided, however, notwithstanding Confirmation or the occurrence of the Effective Date, any such indenture or agreement that governs the rights of the Holder of a Claim or Equity Security Interest shall continue in effect solely for purposes of (a) allowing distributions, if any, to be made under the Plan pursuant to the Indentures and for the Indenture Trustees to perform such other necessary functions with respect

11

thereto, if any, and to have the benefit of all the protections and other provisions of the applicable indentures in doing so; (b) preserving any rights of the Indenture Trustees to indemnification or contribution from Holders of Trust Preferred Securities Claims pursuant and subject to the terms of the Trust Agreements, each as applicable, as in effect on the Effective Date; and (c) permitting each of the Indenture Trustees to maintain or assert any right or Charging Lien it may have against distributions pursuant to the terms of the Plan to recover the Indenture Trustee Claims. On and after the Effective Date, all duties and responsibilities of the Indenture Trustees under the applicable Trust Agreements shall be discharged except to the extent required in order to effectuate the Plan.

On the Effective Date, except to the extent otherwise provided herein, any indenture agreement or other instrument relating to any of the foregoing (including without limitation, the Indentures, the Debentures, the Guarantee Agreements, and the Declarations), shall be deemed to be canceled, as permitted by section 1123(a)(5)(F) of the Bankruptcy Code, and the obligations of the Debtors thereunder shall be fully released and discharged.

For the avoidance of doubt, nothing contained in the Plan or the Confirmation Order shall in any way limit or affect the standing of any of the Indenture Trustees to appear and be heard in the Bankruptcy Cases on and after the Effective Date; provided that such right to appear and be heard does not create or impose a duty or responsibility on such Indenture Trustees."

## II.   Withdrawal of Plan Objections and Related Pleadings and Appeals

The Committee agrees as follows:

A.      Committee Support of Plan.  Upon approval of this Settlement Agreement by the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 9019, the Committee will unconditionally support entry of an order of the Bankruptcy Court confirming the Plan as amended hereby and granting final approval to the Disclosure Statement.

B.      Withdrawal of Objections to Plan.  Prior to the commencement of the hearing on confirmation of the Plan and final approval of the Disclosure Statement, the Committee shall withdraw with prejudice the Committee Objection and the Committee shall cause the members of the Committee to withdraw with prejudice each of the Committee Member Objections.  The Committee represents and warrants to the Debtors that the members of the Committee who have filed the Committee Member Objections have agreed to unconditionally withdraw such Committee Member Objections prior to the commencement of the hearing on confirmation of the Plan and final approval of the Disclosure Statement.  If the hearing on approval of this Settlement Agreement is held immediately prior to the hearing on confirmation of the Plan and final approval of the Disclosure Statement, then the Committee and the members of the Committee shall withdraw such objections orally at the hearing on confirmation of the Plan and final approval of the Disclosure Statement, with formal written withdrawals of such objections

to be filed on the docket within one Business Day after approval of the Settlement Agreement.

C.      Withdrawal of CRO Motion.  If this Settlement Agreement is approved by the Bankruptcy Court at the hearing thereon, then the Committee shall withdraw the CRO Motion prior the commencement of the hearing on confirmation of the Plan and final approval of the Disclosure Statement, with a formal written withdrawal of the CRO Motion to be filed on the docket within one Business Day after approval of the Settlement Agreement.

D.      Withdrawal of Appeals.  Within one Business Day after the Effective Date of the Plan, the Committee shall withdraw with prejudice the Notices of Appeal.

### III.      Amendment to Plan Exhibit B

Preservation of Causes of Action.

1.      Exhibit B to the Plan is amended to add and preserve causes of action and claims of the Debtors against the Federal Deposit Insurance Corporation, as follows:

Causes of action and/or claims including, but not limited to, those based on (i) inconsistent and improper application of accounting conventions; (ii) placing improper pressure on state banking regulators; (iii) giving improper notice to bank subsidiaries of potential cross-guaranty liability stemming from the closure of Commerce Bank of Southwest Florida, on November 20, 2009; (iv) lack of good faith cooperation in bank sale transactions, bank merger proposals, and the larger scale liquidation of the Debtors' subsidiary banks; (v) failure to act in a manner consistent with the FDIC's statutory obligations, including 12 U.S.C. § 1831o(a)'s mandate to "resolve the problems of insured depository institutions at the least possible long-term loss to the Deposit Insurance Fund"; (vi) improperly preventing the Debtors' efforts to supply additional capital to subsidiary banks; (vii) the unnecessary seizure of subsidiary banks; and (viii) failing to negotiate a good faith division of sale proceeds from the sale of subsidiary banks.

2.      Exhibit B to the Plan is further amended to add and preserve causes of action and claims of the Debtors against the Insiders as follows:

Causes of action and/or claims including, but not limited to, those based on (i) breach of fiduciary duty, (ii) failure to implement and maintain effective risk management procedures and internal controls, (iii) self-dealing, (iv) approval of fraudulent transfers, and (v) causes of action under chapter 5 of the Bankruptcy Code; provided, however, that the causes of action and/or claims preserved against the Insiders shall not include any causes of action and/or claims covered by the Exculpation and Limitation of Liability provisions of Article XII.D. of the Plan. In all respects, any and all rights to recovery relating to and arising from such causes of action and/or claims are limited by the provisions of Article XII.E.

13

of the Plan, as modified by the Settlement Agreement between the Debtors and the Committee and the Confirmation Order. Nothing contained in this paragraph shall be deemed to constitute an admission of the Debtors or the Insiders, or constitute other evidence or support for any other assertion, that any such causes of action or claims exist.

## IV.  Other Provisions

A.    Condition Precedent.  It shall be a condition precedent to the effectiveness of the Settlement Agreement that the closing of the transactions contemplated by the Sale Order shall have occurred.

B.    Binding Nature.  This Settlement Agreement shall be binding on the Debtors and the Committee upon the entry of an order granting a motion by the Debtors pursuant to Federal Rule of Bankruptcy Procedure 9019 (the "9019 Motion") seeking approval of this Settlement Agreement.  Nothing herein prohibits a member of the Committee from objecting to approval of the 9019 Motion in its individual capacity.  Upon entry of any order of the Bankruptcy Court approving the 9019 Motion and this Settlement Agreement: (i) the provisions of this Settlement Agreement shall be deemed incorporated into the Plan and Liquidation Trust Agreement by reference; (ii) to the extent of any inconsistency between the provisions of this Settlement Agreement, on the one hand, and the Plan and Liquidation Trust Agreement, on the other hand, the provisions of this Settlement Agreement shall govern and control; and (iii) except as expressly stated in this Settlement Agreement, the provisions of the Plan and Liquidation Trust Agreement as filed on the docket at Docket No. 523 shall govern and control.

C.    Amendments to Plan and Liquidating Trust.  Upon the Bankruptcy Court's entry of an order granting the 9019 Motion, the Plan and Liquidating Trust shall be deemed amended to incorporate the terms set forth in the "Amendments to Plan and Liquidating Trust Agreement" portion of this Settlement Agreement without any further action by the Debtors or the Bankruptcy Court.  Nevertheless, following entry of orders of the Bankruptcy Court approving the 9019 Motion, confirming the Plan and granting final approval of the Disclosure Statement, for the sake of clarity, the Debtors shall file on the docket an amended Plan acceptable in form to the Committee (along with a redlined version) reflecting the amendments set forth in the "Amendments to Plan and Liquidating Trust Agreement" portion of this Settlement Agreement.

D.    Entire Agreement.  This Settlement Agreement constitutes the entire agreement among the parties concerning the matters set forth herein, and supersedes any and all prior agreements between them concerning the matters set forth herein.

E.    Jurisdiction; Choice of Law.  Each of the parties hereto irrevocably consents to the exclusive jurisdiction of the Bankruptcy Court with respect to any action to interpret or enforce the terms and provisions of this Settlement Agreement.  This Agreement shall be governed by, construed and enforced in accordance with the Bankruptcy Code and the laws of the State of Michigan, without regard to its conflicts of law provisions.

14

F.     Amendments.     This Settlement Agreement may be amended, modified, superseded, cancelled, and the terms and conditions of this Settlement Agreement may be waived, only by a written instrument signed by all the parties, or in the case of a waiver, by the party waiving compliance, and subject, to the extent required, to the approval of the Bankruptcy Court.

G.     Execution in Counterparts.     This Settlement Agreement may be executed in counterparts, all of which shall be considered one and the same agreement.  The parties agree that facsimile and pdf signatures shall be considered for these purposes as original signatures.

H.     Notices.  All notices and communications required or permitted by this Settlement Agreement shall be made in writing, signed by the party making the same and shall be deemed given or made (i) on the date delivered if delivered by telecopy or other standard form of written telecommunication and confirmed by receipt of electronic confirmation or other evidence of receipt, (ii) on the date delivered, if delivered in person, (iii) on the third Business Day after mailing by registered or certified mail (return receipt requested) (with postage and other fees prepaid) or (iv) on the day after it is delivered, prepaid, by any overnight express delivery service that confirms to the sender delivery on such day, as follows:

> If to the Debtors:
>
> Capitol Bancorp Ltd.
> 200 N. Washington Square
> Lansing, Michigan 48933
> Attention:  Cristin K. Reid/Brian K. English
> Telephone: (517) 487-6555
> Facsimile: (517) 374-2546
> email:
> cristin.reid@capitolbancorp.com/brian.english@capitolbancorp.com
>
>
> with a copy to (which shall not constitute notice):
>
> Honigman Miller Schwartz and Cohn LLP
> 2290 First National Building
> 660 Woodward Avenue
> Detroit, Michigan 48226-3506
> Attention:  E. Todd Sable
> Telephone: (313) 465-7000
> Facsimile: (313) 465-8000
> email: tsable@honigman.com
>
> -and-

15

Honigman Miller Schwartz and Cohn LLP
2290 First National Building
660 Woodward Avenue
Detroit, Michigan 48226-3506
Attention: Joseph R. Sgroi
Telephone: (313) 465-7000
Facsimile: (313) 465-8000
email: jsgroi@honigman.com


If to the Committee:

Ann Marie Uetz
John A. Simon
Foley & Lardner LLP
One Detroit Center
500 Woodward Avenue, Suite 2700
Detroit, MI 48226-3489
Telephone: (313) 234-7100
Facsimile: (313) 234-2800
Email: auetz@foley.com

-and-

Mark F. Hebbeln
Foley & Lardner LLP
321 N. Clark Street, Suite 2800
Chicago, IL 60654-5313
Telephone: (312) 832-4500
Facsimile: (312) 832-4700
Email: mhebbeln@foley.com


I.    <u>Headings</u>.    The headings in this Settlement Agreement are for purposes of reference only and shall not limit or otherwise affect the meaning of this Settlement Agreement.


[Remainder of Page Left Intentionally Blank]

**CAPITOL BANCORP LTD.**

By: _____
Name: Cristin K. Reid
Its: Corporate President

**FINANCIAL COMMERCE CORPORATION**

By: _____
Name: Cristin K. Reid
Its: Corporate President

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF CAPITOL BANCORP LTD., ET AL.**

By: _____
Name:
Its: Counsel and duly authorized agent

4837-3068-6487.15

12-58409-mbm    Doc 751    Filed 12/31/13    Entered 12/31/13 15:20:05    Page 36 of 39

**CAPITOL BANCORP LTD.**

By:_____
Name:  Cristin K. Reid
Its:  Corporate President

**FINANCIAL COMMERCE
CORPORATION**

By:_____
Name:  Cristin K. Reid
Its:  Corporate President

**OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF CAPITOL
BANCORP LTD., ET AL.**

By:_____
Name:  MARK F. HEBBELN
Its:  Counsel and duly authorized agent

17

## **EXHIBIT A**

**Wind Down Budget**

4837-3068-6487.15

**Capitol Bancorp Limited**
**Estimated Sources and Uses**
**Six Month Budget**

## Sources

| | |
|---|---:|
| Cash estimate | 893,000 |
| Proceeds CNB/Maumee | 217,000 |
| January Management Fees | 350,000 |
| Transition Service fees (6months) | 300,000 |
| **Total estimated sources** | **1,760,000** |

## USES

| | |
|---|---:|
| Accrued and unpaid Vacation time for continui | 149,287 |
| Salary + Benefits (6 months) | 739,000 |
| Occupancy and other (6 months) | 300,000 |
| Audit fees and professional fees | 28,575 |
| Severance for continued employees | 283,138 |
| Staffing for Committee information request | |
| **Total estimated uses** | **1,500,000** |